An appeal having been taken from my order of September 23d 1946, denying the application of Realty Affairs, Inc., and Walter S. Wright, Jr., for leave to intervene in a suit instituted in this court by the George Washington Memorial Park Cemetery Association against the Memorial Development Company, for the purpose of applying for a stay of said cause until another suit commenced by them in this court at a later date against the development company had been determined, this opinion is filed in order to set forth my reasons for denying the application.
The petitioners-appellants, Realty Affairs, Inc., and Wright, are stockholders of the Memorial Development Company, a corporation organized under the general corporation law of this state. It had issued and outstanding 10,000 shares of common or voting stock, having a par value of one mill per share. Realty Affairs, Inc., claims to be the owner of 1,000 shares and Wright 250 shares. Three thousand five hundred shares are owned by George E. Meagher, and the remaining 5,250 shares are owned by Frank De Geeter, who is also the owner of all of the preferred stock of the company.
There has been much litigation in this and other courts *Page 221 
involving the cemetery association, the development company, and the persons interested in both enterprises. The Chancery matters at one time or another have all come before me so that I am familiar with the different phases of the litigation and the conflicting claims and interests of the parties involved.
The cause in which the petitioners-appellants sought to intervene for the purpose of applying for a stay, was one commenced on January 21st, 1946, by the cemetery association against the development company, seeking to have the court decree that certain agreements between the complainant and defendant be declared void and against the public policy of the state; that title to the lands comprising the cemetery, including the right of sepulchre, be declared to be indefeasibly vested in complainant, subject to the equitable obligation on the part of complainant to pay defendant, or to the promoters of the cemetery enterprise, the fair and reasonable value of the lands comprising the cemetery; and that a reference be made to a master to determine the fair and reasonable amount complainant should pay for said lands.
The petitioners-appellants knew of the pendency of this suit, and on February 25th, 1946, filed their bill of complaint in this court against the development company, seeking the appointment of a statutory or, in the alternative, a custodial receiver therefor. This bill was filed with Vice-Chancellor Lewis who, on April 30th, 1946, appointed two receivers for the company. However, on June 3d 1946, the Vice-Chancellor, on his own motion, vacated the appointment of the receivers, and subsequently the cause was referred to me for final hearing by Chancellor Oliphant. I might add that the final hearing in this case took place on January 14th, 1947.
The president of Realty Affairs, Inc., is Albert H. Winans. He was a defendant in one of the suits before me involving a dispute over an election for trustees of the cemetery association (Docket 148/298) and was represented in that litigation by Messrs. Heine Heine, who have appeared in all of these suits as solicitors for George E. Meagher, the owner of 3,500 shares of common stock of the development company. Winans also appeared as a witness for the Meagher interests in other suits involving the cemetery association. *Page 222 
In due course the suit instituted by the cemetery association was referred to me by the Chancellor. In connection with that litigation a committee of lot owners of the cemetery petitioned the court for leave to intervene in the suit. This permission was granted by me on February 28th, 1946.
Thereafter, and on May 27th, 1946, I directed that the Attorney-General be made a party defendant to the suit. This was done and the Attorney-General in due time filed an answer and participated actively in the trial of the cause.
Still later, and on June 10th, 1946, I permitted Messrs. Heine Heine to intervene in the suit on behalf of George E. Meagher, and similar permission was also granted to Frank De Geeter.
In the meantime, the cause had been set down for final hearing for June 25th, 1946.
Conceiving that certain phases of the matter should be referred to a master, an order of reference to a special master was made by me on June 10th, 1946. The special master fixed June 24th, 1946, for a hearing on the matter referred to him. The matter did not proceed to hearing on that day but, with the consent of all counsel, the hearing was continued to September 23d 1946, at 2:00 P.M.
At ten o'clock on the morning of that day the petitioners-appellants, represented by Messrs. Chandless, Weller Kramer, made their application to intervene. The sole reason advanced for the intervention was that, if granted, an application would be made to stay the suit then scheduled to proceed at 2:00 P.M. of the same day, until the matter then pending before Vice-Chancellor Lewis (which was subsequently referred to me) was determined.
In opposing the application counsel for the other parties informed me that both Winans and Wright had been subpoenaed as witnesses for the hearing scheduled before the special master that very afternoon; that Meagher, through his solicitors, Messrs. Heine Heine, had attempted to get other counsel in the case to postpone the hearing scheduled for the afternoon of September 23d; and that failing in this effort, the notice of application for leave to intervene and stay the suit followed. *Page 223 
Passing the reasons advanced by counsel in opposition to the motion to intervene, no satisfactory reason was given by the petitioners-appellants why their application should be granted. Months had been permitted to elapse without any action being taken by them. They knew of the pendency of the cemetery suit and waited until the morning of the very day the matter was scheduled for hearing before making their application. Witnesses had been subpoenaed and counsel were prepared to proceed with the hearing. The adjournment of the hearing before the special master from June 24th, 1946, to September 23d 1946, had been agreed to by all counsel concerned, including Messrs. Heine Heine, and constituted a sufficient adjournment to warrant a meritorious reason for a stay.
Under the circumstances of this case the application to intervene should have been more timely. The granting of such an application is not a matter of absolute right but rests in the sound discretion of the court. One seeking to intervene in a pending cause or to stay the same must show a meritorious defense or other good reason in order to induce the court to act. Downs
v. Jersey Central Power and Light Co., 115 N.J. Eq. 448;171 Atl. Rep. 306.
Turning now to the application on its merits, petitioners-appellants allege in their moving papers that a restraint contained in an order to show cause advised by Vice-Chancellor Lewis in their suit against the development company, to the effect that the corporation be enjoined from contracting debts, collecting money and transferring property, except in the ordinary course of business, prevented the corporation from defending itself in the cause sought to be stayed.
I fail to see how this restraint has the effect claimed. In the cemetery suit I have presently under consideration (the hearing on this phase of the case having been concluded) the question of the validity or invalidity of two agreements, designated as C-2 and C-7. If either or both of these agreements are valid, the cemetery suit will terminate and moneys due under either or both of those agreements will go to the development company. On the other hand, if both agreements are found to be invalid, the question will then arise *Page 224 
as to what, if anything, must be paid by the cemetery association for the lands it acquired, and to whom. The court's control of both cases should set at rest the fear of petitioners-appellants that if the cemetery suit proceeds to a decree, their property, as stockholders of the development company, will be destroyed or materially damaged.
Other allegations made by the petitioners-appellants are that the conduct of the affairs of the development company have been disturbed and disrupted by reason of the litigation between George E. Meagher and Frank De Geeter; that the affairs of the development company and the cemetery association have been commingled; and that they fear the suit instituted against the development company by the cemetery association will not be diligently defended.
In the first place, all the litigation involving the development company and the cemetery association, and the parties interested therein, have been settled with the exception of the two matters now before me, namely, the suit of the petitioners-appellants for the appointment of a receiver of the development company, and the suit of the cemetery association to have certain agreements entered into with the development company set aside. After I decide the question of the validity or invalidity of the agreements involved in the cemetery suit, it will be time enough to decide the question as to whether or not a receiver should be appointed for the development company. The affairs of the company are dormant; no creditors rights are involved; it is engaged in no business activity; and its rights have been actively and diligently defended in the cemetery suit.
In the final analysis petitioners-appellants seek to protect their interests as stockholders of Memorial Development Company. There is sufficient representation of stockholders of the development company in the cemetery suit in the person of Mr. Meagher, who owns 35% of the issued and outstanding common stock of the company. The majority common stockholder, Mr. De Geeter, is also represented in that suit. The corporation itself has been ably and vigorously defended, taking the position, along with Meagher, that the agreements, the validity of which are questioned by the cemetery association, *Page 225 
are valid. Additionally, the Attorney-General, representing the interests of the state, has participated actively at the hearing in the cemetery suit. And lot owners, who are the beneficiaries of the charitable trust, have been permitted to intervene in the litigation. In fine, there was no reason to stay the prosecution of the cemetery suit and its prosecution in advance of a decision in the suit instituted by the petitioners-appellants can in no way prejudice or impair their rights as stockholders of the development company.
It might not be amiss to point out that Messrs. Heine Heine participated actively in the hearing before the special master on the afternoon of September 23d 1946, after their objection to the jurisdiction of the special master was overruled. After the conclusion of the hearing on that day, the matter was continued to October 15th, 1946. On the morning of October 15th, Messrs. Heine Heine informed the special master that an appeal had been taken from the order made by me referring a phase of the matter to him and thereupon withdrew from the proceeding.
Notwithstanding the taking of an appeal, Messrs. Heine Heine, petitioned Chancellor Oliphant to revoke the order of reference made in the cause. The hearing before the Chancellor resulted in a denial of the application; a withdrawal of the appeal taken by Messrs. Heine Heine; a clarification of the order of reference to the special master, limiting him to a determination of land values (the scope of which reference was so intended by the court and apparently understood by all counsel except Heine Heine); and a reference to me of the suit instituted by the petitioners-appellants against the development company.
The hearing on the validity or invalidity of the agreements involved in the cemetery suit has been completed and the court now has the matter under consideration. Following this hearing, the petitioners-appellants suit was tried before me and concluded, and this matter will likewise be considered in due course. *Page 226